[Crim. No. 15536.   Second Dist., Div. One.   Feb. 11, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JOE BENNY HINSON, Defendant and Appellant.

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was convicted of burglary (§ 459, Pen. Code) ; he appeals from the judgment and order denying motion for new trial. The purported appeal from the order is dismissed.

On December 20, 1967, around 12 a.m. as Ann Bray drove by Eddie's Discount Store on Compton Boulevard, she noticed a man crouching near some broken glass facing the window; he was reaching into the window but she could not see his hand; as she drove by he looked up, then started to run westbound. No one else was in the area. Mrs. Bray proceeded eastbound, made a right-hand turn onto Tamarind Street, drove two blocks to Almond Street and turned right; there she saw a patrol car in which an officer was talking to a man who had on the same cap and coat and who she identified as the man she saw crouching in front of the broken window; she did not then stop as she feared the man would recognize her car, but drove back to Compton Boulevard where she

stopped the patrol car and reported what she had seen to Officer Smith.

Around 12:30 a.m. Officer Smith saw defendant run across a parking lot behind a taco stand at the corner of Palm and Willowbrook and followed him; defendant told him he had just left a bar and was running because the officer had frightened him and he was in a hurry to get home, and identified himself as Joe Benny Hinson living at the Pride Hotel at Tamarind and Laurel. Officer Smith let defendant go, then drove to Eddie's Discount Store to check the premises; he observed the broken window and a disarranged display of watch bands, walkie-talkies and transistor radios behind it. With his partner, Officer Kiyasu, the officer drove to the Pride Hotel, went to defendant's room, knocked and entered; Officer Kiyasu advised defendant of his constitutional rights; defendant said he understood those rights and expressed a willingness to make a statement regarding the burglary. Defendant said he had been in a bar at Magnolia and Willowbrook; as he was walking home he noticed the broken glass in the store, went over to the window and looked in; he saw someone drive by, became frightened and left. The officers searched his apartment with his consent but found nothing.

Between 12:15 and 1 a.m. on December 20, 1967, Officer Neidhart, in response to a call, went to Eddie's Discount Store; he found a broken window behind which was a display of jewelry, small radios and other items; on the sidewalk to the west of the store he found a Lucine brand watch, and another Lucine watch a little farther west in the doorway of another store; he searched west to the intersection of Tamarind but found nothing. Officer Kiyasu who was in the vicinity of Palm and Willowbrook around 1 a.m., found four watches, two of which were broken apart, near the corner a walkie-talkie, and behind the taco stand on the corner, two more watches; he tried to take the fingerprints from the walkie-talkie and watch but was unsuccessful. The watches were of the same brand and type as those in the window display at Eddie's Discount Store.

Eddie Cain, owner of Eddie's Discount Store, returned to the store at 4:30 a.m. and after an inventory of the merchandise in the display window estimated roughly 50 watches, several walkie-talkies (3″ x 8″), 3 radio-phonographs (8″ or 10″ x 12″) and two radios (8″ x 10″) were missing; he estimated the value of the watches to be under $1,000; he

identified the watches and walkie-talkies returned by Officer Smith as being similar to the items taken.

Defendant testified that he went to a restaurant on Compton Boulevard, left around 11:30 p.m. and went to a tavern on Magnolia Street where he had a bottle of beer and left at approximately midnight; as he was walking down Compton Boulevard he noticed broken glass from a store lying on the sidewalk and several watches and wheels on the ground; as he bent down to look at them a car passed and the lights from the car hit him; he ran westward away from the car; he did not have any of the items he saw on the ground under the broken display window in his possession when he started to run; he was stopped by an officer in a parking lot but did not tell him of the broken window because he did not want to get involved; he did not burglarize Eddie's Discount Store and did not see anyone else do so.

The sole issue is the sufficiency of the evidence to sustain the judgment. Appellant claims there is no evidence that he entered the premises, and that the facts belie the element of intent to commit theft. The factual arguments advanced in support of these contentions are arguments to be made to the trial court and have no place in an appellate court. Appellant, in effect, requests us to reweigh and reinterpret the evidence in a manner consistent with his innocence of the crime of burglary. But such a determination is the function of the trier of fact; at this stage the test is not whether the evidence may be reconciled with innocence, but whether there is substantial evidence in the record on appeal to warrant the inference of guilt drawn by the trier below. (*People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382] ; *People* v. *Saterfield,* 65 Cal.2d 752, 759 [56 Cal. Rptr. 338, 423 P.2d 266].)

When a judgment is attacked on the ground that the evidence is insufficient to support it, we must view the evidence and the reasonable inferences therefrom in the light most favorable to the party prevailing in the trial court. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

"Burglary may be proved by circumstantial evidence; it is not necessary that a witness actually see the defendant breaking and entering the premises or in the vicinity thereof (*People* v. *Acosta,* 114 Cal.App.2d 1 [249 P.2d 316] ; *People* v. *Flynn,* 73 Cal. 511 [15 P. 102] ).

"Although it is necessary for the People to show that a person charged with burglary entered the premises

with the requisite intent, such intent is rarely susceptible of direct proof, and must, therefore, ordinarily be inferred from the facts and circumstances disclosed by the evidence (*People* v. *Franklin,* 153 Cal.App.2d 795 [314 P.2d 983]).'' (*People* v. *Nichols,* 196 Cal.App.2d 223, 226-227 [16 Cal.Rptr. 328].)

Here the evidence unquestionably established an unlawful and forcible entry of Eddie's Discount Store. From this alone burglarious intent could be reasonably and justifiably inferred. (*People* v. *Michaels,* 193 Cal.App.2d 194, 199 [13 Cal.Rptr. 900]; *People* v. *Stewart,* 113 Cal.App.2d 687, 689 [248 P.2d 768].)    When the evidence is sufficient to justify a reasonable inference that such intent existed, the judgment will not be disturbed on appeal. (*People* v. *Nichols,* 196 Cal.App.2d 223, 227 [16 Cal.Rptr. 328].)

Further, appellant argues that Mrs. Bray ''could not identify the person who was by the store as Hinson [defendant],'' and that if one is bent on theft he will keep some of the items instead of dropping them in the area of the premises.    Identity is a question of fact for the trial court (*People* v. *Smith,* 223 Cal.App.2d 388, 393 [35 Cal.Rptr. 731]; *People* v. *Daniels,* 223 Cal.App.2d 441, 443 [35 Cal. Rptr. 890]; *People* v. *Hornes,* 168 Cal.App.2d 314, 319 [335 P.2d 756]) and any claimed weakness in the identification testimony is a matter of  argument to the court below and cannot be effectively urged on appeal. (*People* v. *Williams,* 53 Cal.2d 299, 303 [1 Cal.Rptr. 321, 347 P.2d 665].)    Ann Bray testified that she saw a man crouched in front of the broken window reaching into it; she identified this man as the one she saw a few minutes later talking to Officer Smith. The evidence shows that soon after Mrs. Bray saw the man run from the premises, Officer Smith, who was in the vicinity, observed him running across a parking lot, stopped him and in the ensuing conversation the man identified himself as the defendant. A short time later in the Pride Hotel defendant admitted to Officers Smith and Kiyasu, and in open court he testified, that he went over to the broken window and looked in, saw someone drive by, became frightened and left. Defendant by his own testimony placed himself on the premises of Eddie's Discount Store at the time Mrs. Bray testified she saw him reaching in the window. As for having no stolen goods in his possession, there no doubt were compelling reasons why defendant dropped the small items when he fled the premises, particularly when he realized that he had been observed.    In any event, it is not necessary that the

stolen property be found in the possession of defendant. (*People* v. *Murphy,* 173 Cal.App.2d 367, 373 [343 P.2d 273].) However, the path defendant took in fleeing the store was strewn with merchandise taken from the display behind the broken window; and supporting an inference of consciousness of guilt which constitutes an implied admission, is the established fact of his hasty departure upon being observed by Mrs. Bray and his conduct on leaving the premises. (*People* v. *Brooks,* 64 Cal.2d 130, 138 [48 Cal.Rptr. 879, 410 P.2d 383].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.